May it please the court. This is Bruce Stolze, Sr. here on behalf of the pharmacies, the opponents in this case. This is the second time this case has been before this court. In the first time when it came up before this court, this court reversed the district court's decision. The district court had determined that a arbitrator would be the entity who would be determining whether or not class-action arbitration was allowed under these agreements. This court reversed and indicated that it would be a court decision. Upon remand to the district court, the district court considered the agreements, considered the arguments of the parties, and determined that there is no express nor any Accordingly, this appeal brings forth that issue to this court. Under the law that has been developed by the US Supreme Court on this issue, a class-action arbitration is only allowed under agreements if there is, if it is within the intent of the parties. So it is the deposition of the intent that is Have you got a post-Stoltz case in which complete silence was held to not preclude class-wide arbitration because of surrounding circumstances? No, Your Honor, I do not. The issues of express or implicit, Stoltz-Nielsen said either express or implicit intent. Stoltz-Nielsen said it cannot be silent. The Lamps Plus case has said it cannot be ambivalent. So the question becomes, at what stage does it have to be? And that's what's before this court. Truly, this case presents a question of whether or not and what delineates an implicit agreement for class-action arbitration. We have argued from the beginning, the pharmacies have argued from the beginning, that these agreements were one agreement negotiated by one attorney, in fact, negotiated by, for with one company. All of these pharmacies are controlled by one agreement, negotiated at one time. It is a single contract, negotiated by one party, and all of them are bound by that party, by that agreement. When Catamaran took over SXC, it then instituted a new, what it, what happened was there were two separate companies, and there were separate pharmacy agreements that existed. Catamaran takes it over and molds it into one agreement, and it says by fiat, this agreement now controls your provider agreements. These pharmacies then were controlled by this one agreement, by that one action of Catamaran. That one action is challenged, and the terms of that agreement are challenged in this class-action arbitration. Both agreements and the new agreement that was imposed upon these pharmacies, per this merger that occurred of these two companies, provided wide class, wide arbitration. All issues were to be cited in arbitration. Accordingly, four pharmacies filed this action for class-action arbitration to have these issues decided. What relevance, you emphasize this throughout your briefs, what relevance is there to the fact that these were negotiated collectively? And let me give you a little background on this, which is that, I mean, it could be that they wanted to get a better deal. That's one reason why you negotiate collectively. I don't know if that happened here. I mean, there's a whole host of reasons. Maybe the individual pharmacies don't want to go through the trouble of negotiating, so they, you know, they group together. I don't know what the reason would be, but why does that necessarily show class-wide arbitration is available? Because when when one contract is negotiated by these parties, and that one contract is then set aside by the merger, and that contract has to be arbitrated because the concerns are that the fact that it was one contract, for whatever reason they negotiated it, makes it an agreement that has joint negotiation or joint arbitration. If I may, Your Honor, let me explain one additional issue on it, because I think it goes a little bit beyond that. Let's assume for the moment that there were just four pharmacies that negotiated the corporations, and so you have a four-party negotiation on both sides. The question is, is it implicit in that agreement that there would be joint arbitration, or is this court and the US Supreme Court going to say that all four parties on the one side and all four parties on the other side have to do this? This is a multi-party transaction. But see, here's the problem I'm having. Your rule, I think, would require us to create an exception to Stolt- Nielsen, or an exception for collectively bargained agreements. Your rule would essentially say we're gonna put the thumb in favor of class-wide arbitration if it's collectively bargained by a group of companies, individuals, whatever. Am I wrong about that? I don't see anything else in this record that suggests class arbitration. I would agree that, Your Honor, that that is a concept that's involved. And the reason I ask about these four parties, my four named representatives have individually sued. And the determination by this court, are they going to be able to jointly arbitrate, or are all four of them going to have to be individual arbitrations? That's fact-specific. I mean, we get, we get, I've had very many cases of arbitrate and so forth. You can't pull that hypothetical and apply it. You're talking, you're probably not talking about class-wide litigation. You're probably talking about four-party situations where an issue has come up, and how many did it affect, and so forth. It is. So let's, as I understand, you, you frame this in terms of all we want to do is arbitrate this, this declaration that the manual trumps the provider agreements. But as I understand the import of your argument, everything, every dispute under this agreement, then becomes subject to class-wide arbitration. Actually, if one pharmacy said, you didn't, you didn't pay, you only paid 80% of what you should have paid on this claim, and I know you've doing, you've done the same thing to a lot of other pharmacies, so I'm going to challenge this particular rate decision on behalf of everybody that we can, through discovery, learn has suffered the same fate. That's, that's, you're saying that's good, right. I mean, in other words, you're pinning it, and I think it, I think it's the, an attractive way to make your position is to take this one declaration in the manual and say, well, we got to have class-wide answer to this. But in fact, your argument is much broader, right? It would have and could have implications that far, your honor. I would agree that it could. And, and, and that's exactly what our prior decision, interpreting Stoltz, said this is all about. It's about, but your honor, the, the, when you have one contract, and, and I understand the arguments of the, of Catamaran indicating this should be individual. There were approximately 85 or 100 different pharmacies, and there can be 85 to 100 different arbitrations relating to this, examining the same issues, examining whether they had the right to come in and impose this, whether they had the right to come in and, and institute a pharmacy manual, whether or not their, their method of determining the pricing was appropriate, or whether they were violating the pricing, and what kinds of damages, impunitive damages could be allowed. All of that can occur, but it all is occurring under a mutually, in this case, bargained agreement, where everyone is subject to the same rules, the same regulations, and it was done at one time. It's not as if Catamaran put an agreement together and then went out to each one of the individual pharmacies and said, here, agree to this. No, actually, Catamaran goes to, in this case, Blue Cross Blue Shield. Catamaran enters into a contract with Blue Cross Blue Shield, saying, we will, in fact, provide all of the medicine for your subscribers. We will do all of that, and they then work with a group of these pharmacies and negotiate one contract, impose that contract, and impose a provider manual. How is that different than form contracts? And the reason why I ask this is because you have AT&T versus Concepcion, right? So you literally have millions of consumers who have the identical, you know, cell phone contract with AT&T, and so everything looks the same, but yet the Supreme Court was very clear that you don't get class-wide arbitration there. How is that different? The difference is, is that in those particular case, each individual entity entered into that contract separately. In this case, it was one contract, and all we're talking about, Your Honor, is that that would be an implicit concept, that implicitly, it would be understood that if you, as a entity, such as a PBM in this case, Catamaran, you enter into one contract with one group of, one particular attorney, in fact, and you're negotiating for all of these people, and that contract's controlling all these people, implicitly within your conduct, it's Catamaran's conduct that did this, your conduct implicitly understood that if you violated terms of that agreement that you did at one time with all of these people, that would be sufficient to allow class-wide arbitration to resolve those kinds of issues. Why shouldn't we just require, why shouldn't we just require this to be in the contract? So exactly what you're saying. So we've, we've negotiated this collectively, and therefore, any violations of this agreement can be enforced collectively in class-wide arbitration. That would be the, that would be, Your Honor, the, the, the alternative to what I believe we are arguing in this case, and we believe that Stolt-Nielsen said implicit or explicit, and that would be express, and that would be essentially changing what has been developed. So we're trying to see if this fits with the implicit. The district court said no, it doesn't. It could be for other reasons, so we're not going to allow that. We believe that this is an example of where commercial entities such as Catamaran should be told, if you're going to go out and negotiate these agreements, and you're going to negotiate one agreement at one time with would occur. I'll reserve the rest of my time. Thank you. Mr. Cassini. Good morning. May it please the court. I'm Jason Cassini of Whitfield Nettie in Des Moines for Catamaran Corporation. I'd like to introduce my co-counsel, Jackie Samuelson. In the first appeal, this court held that there was no contractual basis to find that Catamaran had agreed to having an arbitrator decide whether it had consented to engage in class arbitration. The same controlling precedent and the same factors that this court applied in the first appeal are also determinative in this appeal. In fact, the controlling precedent is now even stronger with the United States Supreme Court's decision in Lamps Plus, which was decided on April 24th, 2019. In that recent case, the U.S. Supreme Court held that neither silence nor ambiguity provides a sufficient basis to conclude that a party consented to engage in class arbitration. It explained that under the Federal Arbitration Act, consent requires affirmative contractual basis to conclude that a party consented to class arbitration. So the position that the pharmacies are asserting in this case is contrary to Stolt-Nielsen. The pharmacies have conceded that the provider agreements at issue in this case are completely silent with regard to class arbitration. Is your argument that the Lamps Plus, which I haven't read, that effectively overrules or eliminates the implicit or explicit language in to overrule Stolt-Nielsen? It puts a significant gloss on the Stolt-Nielsen standards. So there's language in Stolt-Nielsen that leaves open the possibility that you can find consent to class arbitration through, quote, implicit consent. But it is very clear that the Lamps Plus decision, to the extent of what implicit consent might look like, the Lamps Plus majority decision slams that window shut or, at most, leaves it open a very slight crack. Because under Lamps Plus, state law principles of contract interpretation are not sufficient to infer or imply consent to class arbitration. Under Lamps Plus, ambiguity of contract terms is not sufficient to infer or imply consent to class arbitration. And as this court decided in the prior appeal, the reason that there's this inherent tension between the concept of implied or inferred consent to class arbitration and the strict consent that the Federal Arbitration Act requires under the Supreme Court precedent are these fundamental and crucial differences between class arbitration and bilateral arbitration. And this court, in the prior appeal, in its decision, correctly applied that Supreme Court precedent. And that Supreme Court precedent has only gotten stronger now in the interim with the Lamps Plus decision. Lamps Plus prohibiting finding of inferred or implied consent through contractual ambiguity. It's basically what the pharmacies are trying to do in this case. As the court noted, the concept that just simply because the circumstances involved an agent or attorney, in fact, negotiating one contract for multiple pharmacies, that that somehow can get you to inferred or implied consent to class arbitration, is problematic for several reasons. Number one, as the court noted, there's absolutely no case law post Stolt-Nielsen to support the position that you can infer or imply consent just from those circumstances. In fact, Stolt-Nielsen, which is one of the two leading Supreme Court cases on point, actually involved charter parties. So standard maritime contracts, some of which the facts in Stolt-Nielsen make clear, were entered into on behalf of the parties by an agent. So that distinction made no difference in Stolt-Nielsen. And the pharmacies cannot identify any cases in the post Stolt-Nielsen realm that indicate that those sort of circumstances make any difference at all. The record in this case is not extensive because of the the point in the case that the district court disposed of the the claims that Catamaran was making and directing that this case go to bilateral arbitrations, prohibiting class arbitrations, but it is clear in the record exactly what was going on. These pharmacies are businesses. They are not consumers. They are not employees. They are businesses who entered into the access health network for exactly what this court was presuming, which is bargaining leverage to get a better deal with Catamaran. And Catamaran was serving the the Wellmark network in Iowa during this time period. And so you have businesses that consented to terms that require, clearly require, bilateral arbitration. No one is is arguing otherwise. But the provider agreements between the parties do not refer at all to class arbitration. Under the Stolt-Nielsen regime, had we been arguing just based on Stolt-Nielsen, which was the case when the parties were submitting their briefs, you can go through the provider agreements and show term after term where it is referring to a binary two-party relationship between the pharmacy on one hand and Catamaran, the PBM on the other. The pharmacy fills claims in the network. It seeks reimbursement from Catamaran. Catamaran reimburses those claims. And if there's a dispute about the maximum reimbursement amount, which is what these disputes fundamentally are about and what will ultimately be arbitrated, there's an appeal process. But that is between the pharmacy, a pharmacy, and Catamaran. With the LAMPS Plus case, the analysis of well, can you infer or imply consent to class arbitration because of the structure of the contract, the surrounding circumstances, or trying to strain to come to some ambiguity in the provider agreements that might show an inference or implication that Catamaran ever contemplated class arbitration of these types of claims is basically eliminated. LAMPS Plus forecloses that contractual analysis and to the extent there's a state law principle and these are under Illinois law and Maryland law, regardless, even if there is a state law principle out there that would otherwise get the pharmacies to that ambiguity so it could be construed against Catamaran as the draft of these contracts, that is now completely foreclosed by LAMPS Plus. The LAMPS Plus majority saying that that is preempted by the Federal Arbitration Act. So I want to go back to. I'm thinking about there's an attractiveness to opposing counsel's assertion that the question of whether the manual trumps the provider agreement as declared by or as allegedly declared by your client seems like something that should only have to be litigated once. Stepping outside of the arbitration context wouldn't necessarily need a class action you just need a test case. Is there, is there a, is that a realistic possibility? I would think it would be even in an arbitration context. Well to do it, to do it, to do that issue once with the understanding that that maybe will appeal, the loser will appeal the arbitrate what the arbitrator rules but then we're done with it. If I'm right about that then what we're really talking about here is the single pharmacy who says I didn't get a sufficient reimbursement for this opioid and I want to sue for a greater reimbursement on behalf of everyone who's been treated the same. Your Honor, the question before this court right now is whether. It's not differentiated in this way. Well but whether anything in the provider agreements which do reference this provider manual, anything in those provider agreements or the provider manual can get to express consent to class arbitration which the pharmacies concede that there's nothing explicit nothing expressed in the provider agreements or the provider manual. If their position is they are looking somewhere in the provider manual to find implied or inferred consent to class arbitration, that isn't there. I mean if you were if you were going to negotiate a class arbitration provision between the two parties, you might very well pick and choose among issues. Given the what I referred to as complete silence or the lack of explicit affirmative agreement consent to class arbitration, the question is whether is it is it all or nothing in the courts or is is there the ability based on choose what you would imply or infer they must have meant to arbitrate collectively. I don't believe there's any factual basis or legal basis to pick and choose what would be a class arbitration issue and what would be separate. That is a plausible possibility for sorting this out. I think the controlling precedent from the United States Supreme Court and in fact this court's prior decision forecloses sort of picking and choosing. The issue that's determinative is did Catamaran consent to engage in class arbitration period and there's nothing in the record here in these provider agreements from which you can find that certainly not by express consent there's nothing that would allow a finding of implied or inferred consent when you look at the record in this case in these provider agreements in the context of what the US Supreme Court is now telling us with these recent cases. Let me let me ask you this so Lamps Plus talked about ambiguity and as I recall in that case some of the provisions indicated class arbitration and some of them didn't and the court said well that's not good enough you've got to have no ambiguity or or a clear consent for class-wide arbitration but then you have Stolt- Nielsen and silence and ambiguity you know they're they're related concepts but they're distinct and in Stolt-Nielsen it seemed to suggest that silence could be enough as Judge Loken is suggesting if there's other indicia so how do we reconcile put together though and I think he asked you a version of this question earlier those two cases and then apply it here. Right I think how it's applied in this case because I think you have to read the latest case and how it interprets its prior precedent which is Stolt-Nielsen so Stolt-Nielsen obviously everybody agrees silence is not enough Stolt-Nielsen leaves open the concept that it under some scenario implicit consent could be found but then you get to Lamps Plus and it eliminates reliance on state law contract principles it in particular ambiguity and in this particular case you look at what the pharmacy's position is in terms of trying to pick and choose you know definitions and sub definitions or this term could be read to be broad enough to be consent to class arbitration as well as bilateral arbitration or look at the structure the way this particular contract was entered into that is all sort of a species of a search for ambiguity that the Lamps Plus case now clearly forecloses. So you think at the very least it elevated what you need to find to find implied consent. I think the critical term in Lamps Plus is it describes the contractual basis standard that Stolt-Nielsen laid out as it now requires an affirmative contractual basis so that seems to create a lot of tension with the concept of implied or inferred so maybe there would be a case where implied or inferred could be found but it's not this case not based on these provider agreements or anything the pharmacies are arguing. I want to go back to the prior question though about whether there might be some efficiencies you know as to how to deal with common questions within the arbitration. First of all I think that's something that the arbitrators would need to determine in the context of the bilateral arbitrations that would happen under the district courts order but going back to those fundamental and crucial differences you know the Supreme Court has made it clear and I think this court made it clear in its prior decision that there may be an art there might be an argument that well under this particular you know fact pattern this scenario in some ways class arbitration might be advantageous for one or the other party certainly the pharmacies seem to think so they've tried very hard to try to get this case to the AAA as a class arbitration but whether they believe it's tactically better there they believe there might be some advantages to it that's not the law in this circuit that's not the controlling precedent of the United States Supreme Court in fact quite the opposite it's not about what's most efficient it's not about what is the best approach it is about whether class arbitration was consented to by catamaran and you know back to those fundamental and crucial differences if these disputes get arbitrated as a class arbitration you have the concerns about confidentiality that were addressed in the in the brief you have concerns about lots of arbitrator decisions that would not be and you have a major concern about due process considerations of the absent parties the pharmacies that wouldn't be part of that class arbitration and then might get a second bite at the Apple later by challenging whether they had actually consented to engage in it I see my time's up so unless the panel has any other questions thank you very much may please the court in response to the issues of the effect of lamps plus it is true that lamps plus dealt with issue and it dealt with ambiguity but it dealt with a policy decision of ambiguity that was inferred by law it didn't try to get to the intent of the parties and that's what lamps plus I don't understand the distinction well the policy terms okay when it says when a contracts ambiguous lamps plus says looks when it's ambiguous all states say if it's ambiguous you construe it against the drafter therefore it's a policy decision that construes it and therefore it is not trying to get to the intent of the parties it's just a policy of trying to get it to there the difference between that and the implicit agreement is implicit is trying to get to the intent of the parties and when there is an implicit understanding that is why when Caterpillars counsel argues basically you can't infer anything that's not correct that's not what lamps plus says inferring is still a minimal and lamps plus keeps that alive lamps plus just says you cannot infer by referring to some standard rule that a state may create to construe the contract instead you still need as an ultimate concept to look for the intent of the parties to look for the consent that's what you're trying to get to and so when you're looking at this contract and you're saying when these parties negotiated this one pharmacy agreement and then Catamaran comes in and imposes the one on everybody and then says their provider manual now controls everybody can it really be said that the intent of courts getting at reading those two opinions together is that maybe you don't need the words class-wide arbitration you don't even need the words collective enforcement you don't need any of those types of words but you at least have to have some indication on the face of the agreement that the parties might have contemplated perhaps they set up procedures for how to deal with disputes and in doing so they talked about the fact or at least but that's on the on the face of the agreement itself isn't that really the only way you can you can reconcile these two cases it is that is one way you can your honor yes I agree with you it is that is one thing you can do to try to put the reconciliation together that is still trying to say there has to be something expressed in there as opposed to saying these parties implicitly relief for these types of things in a method of reserving it because otherwise you're going to require everyone to be individually arbitrating all of these issues and when you have one contract even if you haven't set up a specific procedure can it really be said that in the minds of these parties they thought well this contract provider manual and its legality all has to be individually arbitrated by all of these people can that really be reasonable and understood as to what the intent was we believe that a reasonable understanding of the intent of the parties which the Supreme Court said is the primo issue I don't understand how a position of someone in catamarans position could ever be in could ever be sure that it wasn't implicitly agreeing to class-wide arbitration when it's the last thing in the world it would agree to it would have explicitly agreed to you're you're you're saying for you know put the put the contract aside let's look at what makes sense and what's sufficient in in this situation for these parties that that's completely contrary to the all the way back to first first options versus Kaplan parties have to agree to arbitrate I understand that is what the argument I understand that argument your honor and I understand why they think in this day and age all of all of the providers and suppliers of the world understand the risks and possible benefits of class-wide arbitration which which frankly if you beat one you beat them all so that's why these entities who do certainly catamaran didn't impose catamaran didn't impose the provider manual because it didn't believe it had a right to do so it did so believing it had the right to do so it would make sense that it would then therefore understand that since we're imposing this under everyone we would get rid of it all done thank you thank you counsel the case has been very well argued thoroughly briefed and we will take it next case for argument is Westfield insurance company versus Miller